UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| LORETTA RUNS AFTER, next friend and Legal Guardian of T.M. (a minor child), | * * * * | CIV 10-3019-RAL |
| Plaintiff, | * * | ORDER GRANTING MOTION TO DISMISS |
| vs. | * * | |
| THE UNITED STATES OF AMERICA, | * * | |
| Defendant. | * | |

## I. INTRODUCTION

Plaintiff Loretta Runs After, the legal guardian of T.M., a minor child, brought this case under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, against Defendant, the United States of America. Doc. 7. Defendant seeks, and Runs After opposes, dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. Doc. 25; Doc. 26; Doc. 27; Doc. 28; Doc. 29; Doc. 32. For the reasons explained below, this Court believes that it must grant Defendant's motion to dismiss.

## II. FACTS

T.M. was born in 1996 and is an enrolled member of the Cheyenne River Sioux Tribe ("Tribe"). Doc. 28-1. T.M. has lived with Runs After, who is his grandmother, on the Cheyenne River Sioux Indian Reservation since he was approximately three months old. Doc. 28-2. On September 10, 2002, a tribal court judge granted Runs After temporary custody of T.M. Doc. 29.

In 2008, at age 12, T.M. was placed in the juvenile detention center in Eagle Butte, South Dakota. Doc. 28-2. The Tribe operates the juvenile detention center pursuant to a "638

contract."[1] Runs After alleges that while T.M. was incarcerated at the juvenile detention center, T.M.'s fellow inmates sexually assaulted him and branded the letter "c"[2] into his arm. Doc. 7; Doc. 28-2. Defendant disputes these allegations.[3] Shortly after T.M. was released from the juvenile detention center, Runs After filed an affidavit with the tribal court requesting that the court transfer temporary custody of T.M. to George Montreal, Sr., T.M.'s grandfather. Doc. 29-24. The tribal court gave Montreal physical custody of T.M and made T.M. a ward of the court on September 30, 2008. Doc. 29-25. Montreal returned T.M. to Runs After and T.M.'s mother on October 31, 2008. Doc. 29-26. The tribal court returned physical custody of T.M. to Runs After on January 23, 2009, and terminated its wardship over him on February 18, 2009. Doc. 29-36; Doc. 29-37.

On June 17, 2009, James Cerney, Runs After's attorney, submitted an administrative claim on a Standard Form 95[4] to the Office of the Field Solicitor for the Department of the

---

[1] A "638 contract," or self-determination contract, is an agreement between a tribe and the federal government under the Indian Self-Determination and Education Assistance Act ("ISDEAA") of 1975. The ISDEAA allows tribes to enter into agreements with the federal government to administer services formerly administered by the federal government on behalf of the tribe. See Hinsley v. Standing Rock Child Protective Servs., 516 F.3d 668, 670 (8th Cir. 2008). The agreements are commonly referred to as "638 contracts," based on the public law number of the 1975 Act. See United States v. Schrader, 10 F.3d 1345, 1350 (8th Cir. 1993); 25 U.S.C. § 450h.

[2] Presumably the "c" stood for the Crypts gang.

[3] Specifically, Defendant contends "[t]he only witness listed in the claim submission regarding T.M.'s sexual assault has since recanted in writing. The evidence also shows that T.M. wanted to become a gang member and asked that the gang symbol for the 'Crypts' be burned into him as part of the initiation 'ceremony.' T.M. told to his friend that he is a Crypts gang member and denied to medical providers that he was assaulted in any way." Doc. 32 at 3 n.2.

[4] Standard Form 95 is the prescribed form for presenting FTCA claims. See 28 C.F.R. § 14.2(a) ("For purposes of the provisions of 28 U.S.C. §§ 2401(b), 2672, and 2675, a claim shall

Interior contending that the staff of the Cheyenne River juvenile detention center was negligent in their supervision of the juvenile detainees. Doc. 27; Doc. 27-1; Doc. 27-2. The Standard Form 95 contains a box for the claimant's signature and asks for the name and address of the claimant and the claimant's personal representative. The instruction section of the Standard Form 95 explains:

> The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

Doc. 27-1; see also 28 C.F.R. § 14.2(a). Cerney listed T.M. as the claimant and himself and attorney Peg Bad Warrior as T.M.'s personal representatives. Doc. 27-1. Cerney signed the "signature of claimant" section of the Standard Form 95 as "James Cerney Attorney for minor child." Id. The Standard Form 95 did not contain any mention of Runs After. Cerney failed to provide any evidence of authority to act for T.M when he submitted the Standard Form 95. Doc. 27-1.

On November 23, 2009, Jason Bramwell, a paralegal for the Office of the Field Solicitor, sent Cerney a letter acknowledging receipt of the claim and stating "[p]lease submit a copy of interviews, medical reports and additional evidence in support of [T.M.'s] claim. In addition,

---

be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident . . .").

kindly submit evidence of your authority to represent T.M. (See 28 C.F.R. § 14.2(a)). Please

provide the requested information within twenty days from the date of this letter." Doc. 27-3.

In a footnote to the letter, Bramwell explained:

> You have not submitted documentation evidencing that you have
> authority to represent the claimant in accordance with 28 C.F.R.
> § 14.2(a). Evidence of authority to represent a claimant generally
> consists of a fully executed representation agreement. Since this
> documentation was not provided, a copy of this letter is being sent
> to Loretta Runs After, claimant's parent/guardian.[5]

Id.

On December 9, 2009, Cerney's legal assistant, Amy Thue, sent Bramwell some of T.M.'s

medical records. Doc. 28-3. Thue sent Bramwell additional medical records concerning T.M.

on January 4, 2010. Doc. 28-4. On February 1, 2010, Bramwell sent Cerney and Bad Warrior

a second letter requesting evidence of their authority to represent T.M. Doc. 27-4. The letter

contained the same footnote as the November 23, 2009 letter. Id.

On February 5, 2010, Thue sent Bramwell a "retainer contract/attorney agreement" signed

by Cerney, Bad Warrior, and Runs After as the legal custodian of T.M. Doc. 27-5. Emails

between Cerney, Bad Warrior, and Thue indicate that Cerney thought that submitting the

attorney agreement would satisfy Bramwell's request for evidence of Cerney's authority to

represent T.M.[6]

---

[5] The affidavit of Jason C. Bramwell filed in this case established that the administrative
record for this FTCA claim contained only two tribal court records—a Cash Bond signed by
Runs After as "Parent/Guardian" of T.M., and an Application for Temporary Release listing no
information about T.M.'s parent or guardian. Doc. 32-1.

[6] In a December 7, 2009 email to Thue, Cerney stated "please include the attorney client
agreement to SG so they have proof we are representing [T.M.]." Doc. 28-5. In a February 3,
2010 email to Bad Warrior, Cerney wrote "[w]e received a letter today from the SG office. They

On March 23, 2010, the Field Solicitor sent Cerney and Bad Warrior a letter denying Runs After's claim. Doc. 27-6. The letter explained that the claim failed "to establish that a federal employee, or tribal employee covered by the FTCA extension, committed a negligent or wrongful act cognizable under the FTCA. Therefore, the claim is hereby denied." Doc. 27-6. In a footnote, the Field Solicitor stated "[w]e have not received documentation evidencing that Ms. Runs After is the legal custodian of [T.M.]. If a request for reconsideration is submitted, please also provide evidence that Ms. Runs After is the legal custodian of [T.M.]." Id.

Rather than submitting a request for reconsideration, Runs After filed the present law suit on August 27, 2010. Doc. 1. In opposition to Defendant's motion to dismiss, Runs After filed a series of exhibits that include, among other things, juvenile personal property sheets listing Runs After as T.M.'s guardian and various tribal court documents concerning T.M. Doc. 29-1 through Doc. 29-46.[7]

---

are requesting documentation of our authority to represent [T.M.]. They are also asking for supporting information as evidence to the rape. We will go ahead and forward a copy of the attorney client agreement to resolve issue one." Doc. 28-6.

[7] Specifically, Doc. 29-1 through Doc. 29-46 consist of: Doc. 29-1, an April 6, 2008 juvenile personal property sheet listing Runs After as T.M.'s guardian; Doc. 29-2, an April 7, 2008 juvenile profile sheet listing Runs After as T.M.'s guardian; Doc. 29-3, an April 7, 2008 cash bond form from tribal court that Runs After signed as T.M.'s guardian; Doc. 29-4, a May 2, 2008 juvenile personal property sheet listing Runs After as T.M.'s guardian; Doc. 29-5, a May 2, 2008 cash bond form from tribal court that Runs After signed as T.M.'s guardian; Doc. 29-6, a June 17, 2008 juvenile personal property sheet listing Runs After as T.M.'s guardian; Doc. 29-7, a June 17, 2008 tribal court detention order in the matter of T.M. listing Runs After as a respondent; Doc. 29-8, a June 19, 2008 personal recognizance bond from tribal court which Runs After signed as T.M.'s parent/guardian; Doc. 29-9, an August 1, 2008 juvenile personal property sheet listing Runs After as T.M.'s guardian; Doc. 29-10, an August 7, 2008 juvenile personal property sheet listing Runs After as T.M.'s guardian; Doc. 29-11, an August 7, 2008 tribal court detention order in the matter of T.M. listing Runs After as the respondent; Doc. 29-12, an August 7, 2008 tribal court order listing Runs After as T.M.'s guardian and notifying Runs After that T.M. had been taken into temporary custody; Doc. 29-13, an August 12, 2008 tribal court order

setting an advisory hearing in the matter of T.M. and listing Runs After as the respondent; Doc. 29-14, an August 20, 2008 explanation of the terms of T.M.'s house arrest that Runs After signed as T.M.'s parent; Doc. 29-15, an August 20, 2008 cash bond form from tribal court that Runs After signed as T.M.'s parent/guardian; Doc. 29-16, T.M.'s August 20, 2008 probation supervision contract that Runs After signed as T.M.'s parent/guardian; Doc. 29-17, an August 27, 2008 tribal court order listing Runs After as T.M.'s parent/guardian and notifying Runs After that T.M. had been taken into temporary custody; Doc. 29-18, an August 31, 2008 juvenile personal property sheet listing Runs After as T.M.'s guardian; Doc. 29-19, a September 5, 2008 juvenile personal property sheet listing Runs After as T.M.'s guardian; Doc. 29-20, a September 8, 2008 juvenile personal property sheet listing Runs After as T.M.'s guardian; Doc. 29-21, a September 10, 2008 juvenile personal property sheet listing Runs After as T.M.'s guardian; Doc. 29-22, a September 11, 2008 detention order in the matter of T.M. listing Runs after as the respondent; Doc. 29-23, a September 17, 2008 tribal court detention order in the matter of T.M. listing Runs After as the respondent; Doc. 29-24, a September 18, 2008 temporary custody order in the matter of T.M. listing Runs After as the respondent; Doc. 29-25, a September 30, 2008 tribal court order in the matter of T.M. temporarily releasing T.M. to the custody of Gary Montreal and listing Runs After as an interested party in attendance at the hearing; Doc. 29-26, a November 5, 2008 tribal court order continuing a detainment hearing in the matter of T.M. and listing Runs After as a respondent; Doc. 29-27, a November 14, 2008 tribal court terms of release order in the matter of T.M. that listed Buffy Handboy or Toni Handboy as the respondent; Doc. 29-28, a November 17, 2008 juvenile personal property sheet listing the tribal court as T.M.'s guardian; Doc. 29-29, a November 17, 2008 tribal court order continuing a hearing in the matter of T.M. and listing Buffy Handboy or Toni Handboy as the respondents; Doc. 29-30, a November 23, 2008 juvenile personal property sheet listing the tribal court as T.M.'s guardian; Doc. 29-31, a December 11, 2008 tribal court order in the matter of T.M. listing Runs After as a respondent; Doc. 29-32, a December 18, 2008 application to the tribal juvenile detention center filled out by Runs After and requesting T.M.'s temporary release; Doc. 29-33, a December 23, 2008 request by Runs After that T.M. be temporarily released to her; Doc. 29-34, a December 29, 2008 juvenile personal property sheet listing Runs After as T.M.'s guardian; Doc. 29-35, a January 13, 2009 tribal court order continuing a hearing in the matter of T.M. and listing Runs After as a respondent; Doc. 29-36, a January 23, 2009 tribal court order of disposition in the matter of T.M. listing Runs After as a respondent; Doc. 29-37, a February 18, 2009 order of dismissal in the matter of T.M. listing Runs After as a respondent; Doc. 29-38, a March 31, 2009 juvenile personal property sheet listing Runs After as T.M.'s guardian; Doc. 29-39, an April 3, 2009 personal recognizance bond form from tribal court that Runs After signed as T.M.'s parent/guardian; Doc. 29-40, a June 24, 2009 juvenile personal property sheet listing Runs After as T.M.'s guardian; Doc. 29-41, a June 27, 2009 personal recognizance bond form from tribal court that Runs After signed as T.M.'s parent/legal guardian; Doc. 29-42, a September 20, 2009 juvenile personal property sheet listing Runs After as T.M.'s guardian; Doc. 29-43, a September 22, 2009 personal recognizance bond form from tribal court that Runs After signed as T.M.'s guardian; Doc. 29-44, a September 21, 2009 juvenile personal property sheet that lists Runs After as T.M.'s guardian; Doc. 29-45, an October 15, 2009 document from the South Dakota Human Services Center listing Runs After as

Runs After does not contend that she provided these documents to Defendant as part of her claim

prior to the lawsuit. Runs After asserts in her argument that Defendant has been in possession

of Docs. 29-1 through 29-23 since Defendant's "initial investigation." Doc. 28 at 2, 7.

Defendant, however, filed an affidavit of Jason Bramwell establishing that the only tribal court

orders in the administrative record were an August 20, 2008 cash bond form from the tribal court

that Runs After signed as T.M.'s parent/guardian, and Runs After's September 3, 2008

application to the tribal juvenile detention center requesting T.M.'s temporary release. Doc. 32-1.

Runs After did not file any affidavit or other material to dispute the Bramwell affidavit.

## III. DISCUSSION

### A. Dismissal Under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a suit when the

court lacks subject matter jurisdiction. The United States Court of Appeals for the Eighth Circuit

has drawn a distinction between facial and factual 12(b)(1) motions, explaining the applicable

standard in each instance. See Osborn v. United States, 918 F.2d 724, 728-730 (8th Cir. 1990);

J.L. Ward Associates, Inc. v. Great Plains Tribal Chairmen's Health Bd., No. Civ. 11-4008-RAL,

2012 WL 113866, at *7 (D. S.D. Jan. 13, 2012). When faced with a factual 12(b)(1) motion like

the one Defendant has made:

> the trial court may proceed as it never could under 12(b)(6) or
> Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion
> is the trial court's jurisdiction—its very power to hear the
> case—there is substantial authority that the trial court is free to
> weigh the evidence and satisfy itself as to the existence of its

---

T.M.'s guardian; and Doc. 29-46, a November 30, 2011 tribal court order in the matter of T.M.
dismissing Montreal's petition for custody and stating that physical custody of T.M. would
remain with Runs After.

> power to hear the case.  In short, no presumptive truthfulness
> attaches to the plaintiff's allegations, and the existence of disputed
> material facts will not preclude the trial court from evaluating for
> itself the merits of jurisdictional claims.

Id. at 730 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir.

1977)).  "The burden of proving subject matter jurisdiction falls on the plaintiff."  VS Ltd. P'ship

v. Dep't of Hous. & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000).  Here, the parties have

submitted evidence in support of and in resistance to the motion to dismiss, and this Court will

consider such evidence as it relates to the jurisdictional challenge.

**B. Sovereign Immunity**

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies

from suit."  Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 475 (1994).  The FTCA contains

a limited waiver of the United States' sovereign immunity for certain torts committed by

government employees, granting federal district courts jurisdiction over claims against the

United States for money damages for:

> injury or loss of property, or personal injury or death caused by
> the negligent or wrongful act or omission of any employee of the
> Government while acting within the scope of his office or
> employment, under circumstances where the United States, if a
> private person, would be liable to the claimant in accordance with
> the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  Congress has expanded the liability of the United States under the

FTCA to employees working pursuant to 638 contracts entered into by Indian tribes or tribal

organizations and the Federal Government.  Demontiney v. U.S. ex rel. Dep't of Interior, 255

F.3d 801, 806 (9th Cir. 2001); Felix Cohen, Federal Indian Law § 22.02[4][a] (2005).  The

8

United States therefore can be liable for tortious acts committed by employees of the tribal detention center, which operates pursuant to a 638 contract.

The procedural requirements of 28 U.S.C. § 2675(a) limit the FTCA's waiver of sovereign immunity by prohibiting a plaintiff from bringing suit against the United States unless the plaintiff first "presents" the claim to the proper federal agency. See Mader v. United States, 654 F.3d 794, 798 (8th Cir. 2011) (en banc); Bellecourt v. United States, 994 F.2d 427, 430 (8th Cir. 1993). Specifically, § 2675(a) provides that an FTCA action "shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency." The presentment requirement of § 2675(a) "is jurisdictional and must be pleaded and proven by the FTCA claimant." Bellecourt, 994 F.2d at 430; see also Mader, 654 F.3d at 805 ("We have long held that compliance with § 2675(a)'s presentment requirement is a jurisdictional precondition to filing an FTCA claim in federal district court.").

In the present case, Defendant contends that Runs After failed to comply with § 2675(a)'s presentment requirement and that this Court therefore lacks jurisdiction to entertain Runs After's suit. Although the FTCA does not identify the exact information plaintiffs must provide to properly "present" their claim to a federal agency, the Attorney General has promulgated a regulation defining § 2675(a)'s presentment requirement. See 28 C.F.R. § 14.2(a); Mader, 654 F.3d at 798. Section 14.2(a) reads:

> For purposes of the provisions of 28 U.S.C. 2401(b), 2762, and 2765, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, [1] an executed Standard Form 95 or other written notification of an incident, [2] accompanied by a

9

claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and [3] the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

Prior to 2011, there was conflicting authority within the Eighth Circuit concerning whether representatives of FTCA claimants had to provide evidence of authority to act on behalf of such claimants to satisfy § 2675(a)'s presentment requirement. While one Eighth Circuit panel held that § 2765(a) requires a representative to submit evidence of authority to act for an FTCA plaintiff, Lunsford v. United States, 570 F.2d 221, 225-26 (8th Cir. 1977), a later Eighth Circuit panel stated that a plaintiff satisfies § 2675(a)'s presentment requirement when the plaintiff provides the relevant agency with "(1) sufficient information for the agency to investigate the claims . . . and (2) the amount of damages sought." Farmers State Sav. Bank v. Farmers Home Admin., 866 F.2d 276, 277 (8th Cir. 1989). The Eighth Circuit directly addressed and resolved the divide in authority among Eighth Circuit panels on the evidence-of-authority question in its en banc decision in Mader.

In Mader, the widow of a man who had committed suicide after a doctor at the Veterans Affairs ("VA") hospital altered his course of treatment completed a Standard Form 95 on which she claimed to be the personal representative of her husband's estate. Mader, 654 F.3d at 798-99. The widow's attorney signed the form and sent it to the VA. Id. at 799. Upon receipt of the form, the VA sent the widow's attorney a letter requesting evidence of the widow's authority to represent her husband's estate. When no one responded to the letter, the VA telephoned the widow's attorney several times, again asking for evidence of authority. Id. Neither the widow

nor the widow's attorney ever provided such authority. The VA denied the widow's claim because of her failure to provide evidence of her authority and, in the alternative, denied the claim on the merits. Id. The widow filed an FTCA claim against the United States in federal district court, purporting to be her husband's personal representative. Id. The district court found that the widow had failed to provide evidence of her authority under § 2675(a) and dismissed the widow's claim for lack of federal subject matter jurisdiction. Id. An Eighth Circuit panel reversed and decided that § 2675(a) did not require the widow to submit evidence of her authority. The United States sought and was granted rehearing en banc.

Before the en banc Eighth Circuit, the widow argued that the proper standard to determine whether a claimant had satisfied § 2675(a)'s presentment requirement was the "minimal notice" standard of Farmers Home Admin., 866 F.2d at 277. By a seven-to-five margin, the Eighth Circuit disagreed. When interpreting the meaning of the term "presented" under § 2675(a), the Eighth Circuit considered the text of the FTCA and "its context, object, and policy." Mader, 654 F.3d at 800. By amending the FTCA in the form of 28 U.S.C. §§ 2672 and 2675(a), the Eighth Circuit explained, Congress "intended to give agencies the first opportunity to meaningfully consider and settle FTCA claims." Id. at 803. Evidence of an FTCA plaintiff's authority to represent a claim's beneficiaries is important to the settlement process envisioned by Congress, because "agencies simply cannot meaningfully consider FTCA claims with an eye towards settlement if representatives fail to first present evidence of their authority to act on behalf of claims' beneficiaries." Id. In keeping with congressional intent to allow federal agencies the initial opportunity to review FTCA claims, the Eighth Circuit held that "a properly 'presented' claim under § 2675(a) must include evidence of a representative's authority to act on

behalf of the claim's beneficiaries under state law."[8] Id. The Eighth Circuit further held that failure to properly present an FTCA claim is a jurisdictional defect because "a claim that fails to satisfy § 2675(a)'s requirements remains inchoate, unperfected, and not judicially actionable." Id. at 807. Because the widow in Mader had failed to provide such evidence despite numerous requests from the VA, the Eighth Circuit affirmed the district court's decision to dismiss the widow's claim for lack of subject matter jurisdiction. Id. at 808.

The Mader decision is at odds with other circuits that have refused to deem it a jurisdictional defect for an FTCA claimant to fail to present evidence of a claimant's representative capacity. See id. at 809-10 (Bye, J., dissenting); see also Transco Leasing Corp. v. United States, 896 F.2d 1435, 1443 (5th Cir. 1990) ("Because . . . the regulations promulgated pursuant to § 2672 are independent of the jurisdictional notice requirements of § 2675(a), the Bank's failure to comply with Regulation 14.3(e) is not a jurisdictional bar to the claims of [the decedent's] widow and daughter."); Knapp v. United States, 844 F.2d 376, 379 (6th Cir. 1988) ("[T]he regulations contained in 28 C.F.R. §§ 14.1-14.11 govern administrative settlement proceedings; they do not set federal jurisdictional prerequisites.") (internal marks and citations omitted); GAF Corp. v. United States, 818 F.2d 901, 905 (D.C. Cir. 1987) (holding that the regulations contained in 28 C.F.R. §§ 14.1-14.11 "do not govern the jurisdictional requirements of § 2675(a)); Warren v. U.S. Dep't of Interior, 724 F.2d 776, 778-79 (9th Cir. 1984) (declining

---

[8] The requirement of evidence of a representative's capacity is spelled out in 28 C.F.R. § 14.2(a) and not explicitly in § 2675(a). Despite debate over the authority of the Attorney General to add such a requirement or whether to make such a requirement jurisdictional, the majority opinion in Mader read into § 2675(a) the requirement, jurisdictional in nature, of presentment of evidence of authority to act to the Government prior to filing an FTCA case. Mader, 654 F.3d at 804-08; see also id. at 808-16 (Bye, J., dissenting).

12

to interpret the evidence-of-authority requirement as jurisdictional). If Runs After's case were in a district court outside of the Eighth Circuit, her claim might well survive the motion to dismiss. This Court, however, is bound to follow Eighth Circuit precedent. See Hood v. United States, 342 F.3d 861, 864 (8th Cir. 2003)("The District Court . . . is bound . . . to apply the precedent of this Circuit.").

Defendant, relying on Mader, asserts that Runs After did not satisfy § 2675(a) because she failed to submit evidence of her authority to represent T.M. prior to filing suit and that this Court therefore lacks subject matter jurisdiction over Runs After's claim. When, as in the present case, a defendant challenges subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdictional facts. See VS Ltd. P'ship, 235 F.3d at 1112. Runs After has failed to meet this burden. Runs After asserts that Defendant possessed all or at least some of Doc. 29-1 through Doc. 29-46 at the time of the Department of Interior's initial investigation, but has provided no evidence—by way of affidavit or otherwise—to support this contention. Defendant's reference in pre-suit letters to Runs After as T.M.'s "parent/guardian" reveals that Defendant had some information regarding Runs After's relationship with T.M., but Defendant has explained that the only tribal court record in its possession at the time containing that information was the August 20, 2008 cash bond fo rm signed by Runs After as T.M.'s parent/guardian. Doc. 32-1. The United States could not rely on the cash bond as proof of Runs After's authority to make an FTCA claim for T.M.; indeed, between the time of the cash bond and the Standard Form 95, the guardian for T.M. changed from Runs After to George Montreal, Sr. and then back to Runs After. Cf. Mader, 654 F.3d at 801-803. Runs After submitted no affidavit showing what evidence of her authority to represent T.M. that she or Cerney provided

13

to Defendant as part of the administrative claim. Nor has Runs After sought to have any evidentiary hearing before this Court to challenge Defendant's proof that only two tribal court records were part of its administrative file, neither of which conclusively established Runs After to be the one authorized to make the claim.

Runs After advances two main arguments in an attempt to distinguish her case from Mader. First, Runs After asserts that she and Cerney were more responsive and open to Defendant's requests than were the attorney and widow in Mader, which in fact is true. Despite this difference, however, Runs After and the widow in Mader both committed the same critical error: neither one provided the appropriate agency with evidence of their authority to represent the FTCA claimant in question. There is nothing in the majority opinion in Mader to suggest that an effort by an FTCA claimant that falls short of providing proof of representative authority under the Eighth Circuit's interpretation of § 2675(a) is sufficient to avoid dismissal of the claim.

Second, Runs After contends that unlike the widow in Mader, she actually has authority to bring a claim on behalf of T.M, which also appears to be true. However, the focus under Mader is not whether a plaintiff has actual authority to bring a claim, but whether the plaintiff has first presented to the appropriate federal agency evidence of his or her authority "to act on behalf of the claim's beneficiaries under state law." Mader, 654 F.3d at 803; see also 28 U.S.C. § 2675(a) ("An [FTCA] action shall not be instituted . . . unless the claimant shall have *first* presented the claim to the appropriate Federal agency . . .") (emphasis added). The Eighth Circuit adopted this approach as consistent with Congress's desire to give federal agencies the initial opportunity to review FTCA claims; without evidence of a plaintiff's authority to represent a claim's beneficiaries, federal agencies cannot seriously consider settling the claim. See Mader,

14

654 F.3d at 803. The Eighth Circuit in Mader referred to the widow's lack of authority to bring the claim as an alternative ground for dismissal, after concluding that it was the absence of compliance with the requirement of presentment of representative authority that justified dismissal of the claim. Id. at 808.

In addition to her attempts to distinguish her case from Mader, Runs After contends that her failure to submit evidence of her authority was harmless because the Department of the Interior investigated her claim and denied it on the merits.[9] The Eighth Circuit's majority opinion in Mader that compliance with § 2675(a) "is a jurisdictional term of the FTCA's limited waiver of sovereign immunity" forecloses this argument. Mader, 654 F.3d at 808. Congress alone has the power to waive the United States' sovereign immunity and to set the terms and conditions of such a waiver. See United States v. N.Y. Rayon Importing Co., 329 U.S. 654, 660 (1947) ("It has long been settled that officers of the United States possess no power through their actions to waive an immunity of the United States or to confer jurisdiction on a court in the absence of some express provision by Congress."). Because, at least in the Eighth Circuit, presentment of authority to represent a claimant is a condition to the United States' waiver of sovereign immunity under the FTCA, Mader, 654 F.3d at 800, the Department of the Interior's denial of Runs After's claim on the merits cannot excuse Runs After's failure to submit evidence of her authority to represent T.M. After all, in Mader, the VA had denied the widow's claim on its

---

[9] As noted above, the Department of the Interior's denial letter also stated "[w]e have not received documentation evidencing that Ms. Runs After is the legal custodian of [T.M.]. If a request for reconsideration is submitted, please also provide evidence that Ms. Runs After is the legal custodian of [T.M.]." Doc. 27-6.

merits, Id. at 799, yet the Eighth Circuit did not thereby deem the lack of presentment of representative authority to be harmless.

Defendant could have been more explicit in its requests for evidence of Runs After's authority to bring a claim on behalf of T.M. After all, Bramwell's letters to Cerney asked for evidence of "*your* authority to represent [T.M.] (See 28 C.F.R. § 14.2(a))." Doc. 27-3 (emphasis added); see also Doc. 27-4. Yet Defendant's communications were not so ambiguous or confusing as to mislead Runs After or her attorneys into thinking that the attorney agreement was sufficient to satisfy the presentment requirement as interpreted and applied in Mader. Defendant's letters stated that "[y]ou have not submitted documentation evidencing that you have authority to represent the claimant in accordance with 28 C.F.R. § 14.2(a)." Doc. 27-3; Doc. 27-4. In addition, the instruction section of the Standard Form 95 parrots the language of 28 C.F.R. § 14.2(a) and explains that when a claim is signed by an agent or legal representative, "it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative." Doc. 27-1; see also 28 C.F.R. § 14.2(a). Nor, as Runs After asserts, does the attorney agreement by itself satisfy § 14.2(a)'s presentment requirement. Although indicative of Cerney's authority to represent Runs After, the attorney agreement does not establish that either Runs After or Cerney had authority to bring an FTCA claim on behalf of T.M.

This Court has considered whether the rationale of the district court in Forest v. United States, 539 F. Supp. 171 (D. Mont. 1982) justifies denying the motion to dismiss. The court in Forest acknowledged the presentment requirement's jurisdictional nature, yet held that the failure

16

of a decedent's sister to provide evidence of her authority to represent the decedent's minor child was an "'extenuating circumstance' sufficient to excuse literal compliance" with § 14.2(a)'s presentment requirement. 539 F. Supp. at 174. In reaching this conclusion, the court explained that the "function of 28 U.S.C. § 2401(b) and § 2675(a) is to provide 'for more fair and equitable treatment of private individuals when they are involved in litigation with their government.'" Id. at 174 (quoting S. Rep. No. 89-1327, at 2515-16). This differs from the majority opinion in Mader, which determined Congress's intent in enacting §§ 2675(a) and 2762 to be to allow federal agencies the initial opportunity to review and settle FTCA claims. 654 F.3d at 803. The Forest court's reliance on House v. Mine Safety Appliances Co., 573 F.2d 609 (9th Cir. 1978) overruled by Warren v. U.S. Dep't of Interior, 724 F.2d 776, 780 (9th Cir. 1984), also makes it difficult for this Court to follow Forest. In House, the Ninth Circuit held that an attorney's failure to provide evidence of his authority to represent an FTCA claimant deprived a district court of jurisdiction to hear the suit "in the absence of unusual and extenuating circumstances . . ." 573 F.2d at 618.[10] The court in Forest found that the "need to protect the rights of minor children" was an extenuating circumstance. 539 F. Supp. at 174. Unlike House, the Mader decision does not contemplate an "extenuating circumstance" exception to § 14.2(a)'s presentment requirement. This Court is reluctant to create an "extenuating circumstance" exception on its own in light of the majority opinion in Mader and believes it best for the Eighth Circuit to determine if such an exception exists and should apply here.

---

[10] The Ninth Circuit overruled House in Warren by declining to interpret 28 C.F.R. § 14.3(e)—which contained the evidence-of-authority requirement prior to 1987—as jurisdictional. Warren, 724 F.2d at 779-80.

This Court is cognizant that the result of this decision is a harsh one. A minor, through no fault of his own, might be barred from bringing an FTCA claim. Outside of the Eighth Circuit, where the presentment-of-authority responsibility set forth in 28 C.F.R. § 14.2(a) is not deemed jurisdictional, this case would not be susceptible to dismissal. See Transco Leasing Corp, 896 F.2d at 1443; Knapp, 844 F.2d at 379-80; GAF Corp. v. United States, 818 F.2d at 905; Warren, 724 F.2d at 778-79; Champagne v. United States, 573 F. Supp. 488, 491-93 (E.D. La. 1983) (widow satisfied presentment requirement even though she failed to provide evidence of her authority to present FTCA claim on behalf of minor children). From the perspective of this Court, it is for the Eighth Circuit to determine whether Mader ought to be modified or some exception created to allow the claim to survive the motion to dismiss, and ultimately is up to the Supreme Court of the United States to determine whether Mader or decisions from other circuit courts of appeals properly interpret and apply § 2675(a). This Court, however, is bound to follow Eighth Circuit precedent. Hood, 342 F.3d at 864.

## IV. CONCLUSION

For the reasons stated above, it is hereby

ORDERED that Defendants' Motion to Dismiss (Doc. 25) is granted.

Dated July 18, 2012.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

18